Number 19-5031, Electronic Privacy Information Center Appellant v. United States Department of Commerce et al. Mr. Davidson, for the appellant, Ms. Carol DiAppoliz. Good morning, your honors. John Davidson, Electronic Privacy Information Center. I've the requirements for those impact assessments. Assessments must be commensurate with the size, the sensitivity, and the privacy risks collection. Assessments must explain how the data is going to be used, protected, and possibly distributed. And most importantly, each assessment must be completed, reviewed, and made public before the agency initiates collection. That's the key thing here, is they haven't initiated one yet, have they? Well, your honor, so the initiation of, initiating a new collection of information is the statutory trigger. And they have not collected the first data yet, have they? That's correct, your honor. Good. So what are you doing here? Fair enough, your honor. So initiating a new collection of information, and specifically the phrase collection of information, has to be understood in the context of the provision. Yeah, right. And in the context of it, they haven't collected the first data yet. Your honor, that is the collecting of information, or the... What relief are you praying here? Pardon, your honor? What relief are you praying here? A preliminary injunction, your honor. A preliminary injunction against what? Requiring the Census Bureau to suspend the collection of information until it is completed. No, but you did tell us, aren't you asking the district court to enjoin them from initiating? Isn't that the term you use in your prayer for relief? Well, they have already initiated, but we are asking... Isn't that what you asked the court to do, to stop them from initiating? Am I wrong about that? Well, sorry, just to back up a little bit, sorry. So we argue that the initiation of collection occurred on March 26, 2018. I know you're arguing that, but does that make any sense when you're asking us to prevent them from initiating? We are asking them to suspend initiation, suspend collection that is already underway. The collection of information, your honor, is a process. It's clear from the... How can it be the intent of Congress in using the word initiate to mean that you have to do it before you even start thinking about doing it? You have to file the PIA before you even think about, before you even announce that you're going to be collecting. Your honor, that's not what we're... Is that what would be the meaning of that? That's not the meaning we're proposing. We're proposing that the PIA is due before the agency concludes its decision-making process and begins the agency process of... Has it concluded its decision-making process? It has, your honor. It took final agency action on March 26, 2018, and the agency concedes that point. What did they say on March 28? What did they do on March 28? They concluded that citizenship information would be collected on the 2020 census. They were saying we're going to initiate in the 2020 census, but they did not begin collection, did they? Your honor, the collection of information, if one refers to the collection of a debt, it's referring to a process that a debt collector undertakes to obtain money from someone who owes the debt. In the same way, the collection of information is a process... Does the collection of a debt happen before you make a demand to the person that owes the debt? The debt is not collected until the... No, no, until you demand that they pay. They haven't demanded that anybody turn over or say anything. Yeah, I think that's Judge Sentel's point. I think the collection helps you. So in the case of a collection of a debt, there are several antecedent steps that have to happen as part of the collection process. They would have to identify... For example, the preparation of the PIA. Pardon? For example, the preparation of the PIA, that has to happen before they initiate their process under the law. Well, so let me point to the statutory definition here. The statutory definition of collection of information points to four different sub-definitions, and then those definitions are further developed in the OMB regulations. And the OMB regulations make it clear that one of the interpretations that that definition is susceptible to is a plan or an instrument calling for the collection of information. And so that is precisely what's been initiated here. The agency has begun to implement the plan that it decided on over a year ago. It has a series of steps that it must take as part of the collection process. They include notifying Congress pursuant to Title 13 of what's going to be collected, of developing a census form, of notifying the OMB what information is going to be collected, printing the census forms, addressing them, mailing them, ensuring they're being delivered to the respondents. All of these steps are a necessary part of the collection of information, even though no information has been collected to date. And those are the steps that were initiated when the decision-making process concluded and the implementation of the collection began, again, on March 26, 2018. I'm trying to understand. No forms are going to be mailed or emailed out, so no one's going to be requested to provide this information before 2020, correct? That's correct, Your Honor. Do you know if they go out January 1, or when do they go out in 2020? I don't know the exact date. All right, so at some point in 2020, no one's going to be asked to disclose any information, to do anything that's going to implicate their privacy. Nobody is. That's correct, Your Honor. And if before—I'm trying to figure out what on earth is irreparable about your injury, because as long as they do, as they have said, these privacy assessments before, and they've said they're going to do them before those get mailed out, you're not irreparably injured. Well, Your Honor, the harm here— We've got plenty of time to litigate the timing on this. There's plenty of time to litigate a case between now and 2020. This isn't normally the type of thing where we'd be crashing up here for a preliminary injunction. Your Honor, the printing of census forms begins in about a month, and at that point— It might be a royal pain for them if they were to go, I'm dubious given the nature of these assessments, but if they were to get to the very last system in December 2019 and do the privacy assessment and go, Whoa, maybe we shouldn't be collecting this, then any injury is on them. You're not irreparably injured if they have to change their mind and reprint the forms without the question, right? You're not injured. You're, in fact, happy about that. So don't point to that as your irreparable injury. As long as they make their assessment before these things are mailed out, you're not irreparably injured. Well, Your Honor, there is an active nationwide debate right now about the census, about the addition of the census— There sure is, but we're only talking here about whether you're irreparably— You want a preliminary injunction. We're not deciding the merits issue. And you have to show not just injury, but irreparable injury. Yes, Your Honor. You're in a narrow box here. That's true, but— And there's nothing—what's irreparable? What's irreparable that's happening to you right now? That we do not have access to information about the agency's analysis of privacy. But you only have a right to that. Let's assume everything goes out January 1, 2020. You're not injured unless you don't have that information by January 1, 2020. But that's information that's critical to an ongoing— It doesn't matter. You only have a right to it coming out. You might like it. You might prefer it. But you only have a statutory right to have it before, for my assumption, January 1, 2020. Your Honor, that's not how we read the statute at all. As I've been describing, the collection of information is an administrative process that includes numerous steps, many of which have already been taken, more of which remain to be taken. But to the extent you wanted that information before the—I'm sorry, March decision? March 26, 2018, yes. Okay, you may have wanted it before that or at the same time that decision came out. But that's water under the bridge, right? But the agency is taking more steps every day and spending more dollars every day on this process, and it is— That's not an irreparable injury to you. But not being able to obtain information critical to EPICS and the understanding of EPICS members and the public's understanding of what the agency is doing with respect to its— That wouldn't even be enough to give you standing at this point, let alone irreparable injury. Your Honor, I disagree. I think we've been— I know you disagree, but our decision is final on that, not yours. Telling me you disagree isn't—that didn't get in your report. What— You claim associational standing. We do, Your Honor. And I don't think you have any problem about being an association. I understand that. But which of your members is hurt how by not having this information today as opposed to in 2020? Because, Your Honor, the Section 208 is designed, as Congress has said, to ensure sufficient protection of the privacy of personal information. No, it doesn't have to be designed. Tell me which of your members is on the record is injured in some place by not having the information now. All three of the members who have entered declaration to the record, Your Honor. How are they—what injury personal to person A in your three—I don't remember their names, but what injury personal to that person is being caused by the agency's actions that can be remedied in this lawsuit? Your Honor, the Census Bureau has made it clear that it will collect the citizenship status information of every person who is required to respond to the census. All three of that mixed members reside in the U.S., and they are required to provide that information. They haven't been required yet. That's true—well, the requirement exists. The deadline hasn't— That, in fact, is an injury common to all. You need an injury personal to your client. Well, Your Honor, the Supreme Court made clear in FEC v. Aikens, the fact that an informational injury is widely shared does not make it a generalized grievance. But the informational injury, generally speaking, is a failure by the agency to disclose information that it has. That's correct, Your Honor. Are you saying the agency has information there that it's keeping from you on demand? Well, the statute requires the agency both to develop and to— No, no. Listen to the yes or no question first. You get to explain it then. But are you saying that the agency has information here that it's failing to disclose on demand? We don't know, Your Honor, because they haven't produced the requisite privacy impact assessment. I don't—it's not clear what they've done. Well, you cannot answer a yes or no question. Is that correct? Unless you can answer a yes, you're going to have trouble understanding. I don't understand an informational injury to be stated by saying they don't—may not have the information that we're entitled to. That brings us back to the additional questions about when are you entitled to it. Your Honor— I don't even see now how you have alleged an injury to give your member's standing. So it's the same type of standing that supports this Court's issuance of preliminary injunctions in the Environmental Impact Statement context, in the National Environmental Protection Act context. There, the agency— I have an affidavit from a member of the association that says, I go out to a recreational park, I recreate there, and this environmental problem may cause entezema when I come out there and start breathing. We have something personal to that person on their failure to provide the information that the new place is designed to provide. I'm not finding here—I'm assuming that there is a right to privacy that would protect the citizenship, and that's—you've got a pretty good leap there to start with. Assuming that's the case, I don't see how you've got informational standing at this point. Your Honor, in the same way that someone who uses and enjoys a park would have their aesthetic rights or their rights of enjoyment affected by an agency action taken without a sufficient analysis of the environmental factors, EPICS members will be injured because their personal data will be forcibly disclosed by an agency that is not legally entitled to it in our reading of the statute because the agency has not adverted to the privacy consequences of that collection. Well, the information doesn't have to be in the government's hands who would have an informational injury under FEC v. Aikens, right? It's not that they really have to have it in hand. As in it doesn't have to already be developed. Exactly. Yes. Right, right. So that's settled by the Supreme Court. Yes, Your Honor. Right. But it seems to me more that yours is a question of, for me, this is a preliminary injunction appeal irreparability, and you've got plenty of time to have your fights about this. I'm also just curious about, you've got the, so you've seen the assessment they did on Senate 08. And on page 5 of it, they talk about information contained within the major applications, and they describe all the protections for the major applications, many of which are listed on the next page, page 6. So they say here, both for the Senate 08 and for everything listed in the definition of major applications on page 6, which is this paragraph long of other Senate systems, here's what the protections are, right? So you've got this information about Senate 08, and it's also telling you about Senate 7, Senate 5, Senate 11, Senate 18, Senate 19, Senate 21, Senate 30, Senate 36. Here's what we're doing to protect your privacy. So your board members that are worried about what's going to happen, how their information is going to be handled, have been told what's going to happen under Senate 08 and under all of those that I just listed. So now you're just fighting about some incremental additional information about how their citizenship information is going to be handled under a few other Senate systems. For which you already have a lot of information about because they're handling other private information. You've got privacy assessments already on the book. I don't understand what the increment is that you think you're going to get for a couple of remaining Senate systems. It's going to be any different from this and any different from the privacy assessments that are already out there. And don't you have to show that to demonstrate an irreparable injury? Yes, Your Honor. So I'll point to a few things that are missing from the filing of the government before the court. The first is that it doesn't explain how, it doesn't assess other alternative processes for developing the same information. That's a requirement under the OMB regulations. Is that a requirement for the collection of information or for getting new technology systems in? It's required for both. You're operating like this is starting for the first time, right? The Census Bureau has been collecting private information, more private than your citizenship. I assume the members you mentioned are not here without documentation. So are they actually U.S. citizens? It's not identified in the declarations. I assume their citizenship status or their residential status is not assessed. Right. Okay. So the Bureau collects all kinds of private information, and they've been doing all kinds of privacy assessments. And as I've explained regularly time and again, including updates since March 2018, about how the information collected is protected, how the privacy concerns and the privacy assessment are implemented. And now they've said under Senate 08, guess what, surprise, we have all those same protections still here, even though now we're asking about citizenship. And we have them for these other major applications as well. So it's not, you're against a baseline of an awful lot of privacy assessment information already in your hands. Correct? You're going to tell me there's two or three other systems not mentioned on this list that you don't yet have the paperwork on? But you already have privacy assessments for. They just haven't said including citizenship. Well, I don't think just saying including citizenship is a commensurate analysis of the type that Section 208 requires. It requires it be commensurate with the sensitivity of the system, the privacy risks involved. Do you think citizenship is more or less private than all the information they've been collecting before about family members and status? Your Honor, it is a new collection of information. It may be, but you just said I don't know how they're going to protect the privacy of it, but I think you really do. Well, Your Honor, so just to be clear, this is not simply a cybersecurity analysis. It is not simply an analysis of whether access rights have been controlled or the information collected. It is a privacy impact assessment. It requires the agency to consider the impact on the privacy of the individuals whose data will be collected, and this analysis that the agency has put before the Court recently does not reflect that. Well, let me ask you one other thing. So I get that citizenship is new, at least hasn't been for quite some time on the general censorship questionnaire, but it has been on the long form or the community survey form, including, I think, in 2010, right? And so there's got to already be – they say they've been doing that all along. My understanding is that in 2010 it was on what I call the long form, but it has – My recollection is that it was approved for 2000, not 2010, but it has been asked in the past, yes, on the long form. That's correct. Okay, it was not asked in 2010? I confess I don't know. I thought it was not asked in 2010, but it was only asked in 2000. Anyway, on the long form. Okay. All right. Well, if it were asked in 2010, I guess I will ask them, then there would already be privacy assessments out there on the censorship question as well, even though it wouldn't be going to everybody. It would just be going to 3 million people. We are aware of no such assessment. I mean, the agency hasn't put that forward despite this litigation carrying on for several months. Okay. Just one final point. The purpose of 208 is, as the agency concedes on page 23 of its brief, to affect agency decision-making, to inform agency decision-making, and that cannot occur if an assessment is being conducted after the decision-making has concluded, after all the parameters of the data collection have been set. So in order to serve the purpose of this provision, as Congress has established, it is necessary for the assessment to be conducted prior to that initiation of the collection. Thank you. Ms. Carroll. May it please the Court. Sarah Carroll on behalf of the government. I'd like to start off with Judge Millett's question to make sure I don't forget about it. You're right that the Census Bureau does ask about citizenship. It was on the long form. My understanding is that the long form. In 2010? What's that? In 2010? My understanding, I can double-check this, but I think the long form was replaced with the American Community Survey in 2005, I believe. I'll let you know if I'm wrong about that. And the citizenship question has been on the American Community Survey since 2005. There are published privacy impact assessments about the American Community Survey, so you're absolutely right that there is public information about how citizenship is used. So you've already done privacy assessments about asking, does that go to, what, 3 million people? How many people get that? I don't know the exact number, but that sounds right. You've already got privacy assessments. Do you use the same technology systems to process the, I keep calling it the long form, the ACS form? My understanding, which I can again confirm, is that it's a separate system. So, you know, it's not the exact same privacy impact assessment that will apply to the storage of citizenship information in Senate 08 and the other systems that hold decennial census information. But as I think your Honor's basic point that there is a whole lot of information out there about this already is correct. I also want to sort of dispel this notion that I think EPIC has been trying to promote, that the Census Bureau, you know, just hasn't thought about, privacy hasn't thought about how it's going to protect this sort of information. What the Census Bureau does is data collection. And again, as your Honor noted, the Census Bureau collects a whole lot of sensitive information, information that is not, certainly not meaningfully less sensitive than the citizenship question. And the Census Bureau takes privacy and information security extremely seriously. It has privacy impact assessments for, I think, about probably a couple dozen information systems that are publicly available. It reviews and updates these frequently. And EPIC, you know, EPIC can, there is no legal basis for EPIC to come in and say you need to change your well-developed system for looking at the privacy and information security protections associated with your systems. Every time that you are simply thinking about adding a new question to the 2020 decennial census, the American Community Survey, or anything else. And we're, so we're here on a PI. And irreparable injury, injury irreparable injury, are both sort of special basis for just denying a PI, correct? Yes, absolutely. We could just, I think, under our prior EPIC decision, involving the same statute, you can affirm the denial of a PI just as much for failure to show irreparable injury as you could for, whether you showed standing or not, at the plausibility level in district court. I would think that, so we think, to be clear, that EPIC does not have standing. And I would think that since that's a jurisdictional issue. Well, in EPIC, in the prior EPIC decision, they decided there wasn't a substantial likelihood of standing. Right. But didn't dismiss the whole case, just said that's a basis for denying the PI. Yes, yes. And I don't know why, they have to do uber standing to get a PI. If you think of irreparable injury, that uber component of standing to get a PI, plain old injury isn't enough. They have to have irreparable injury. And it seems to me that that would be a sufficient basis as well for denying a PI. That may well be. And we also think the court could deny the PI and should deny the PI on the basis that EPIC has not shown a substantial likelihood of standing. Right. EPIC has not shown any concrete privacy threat. Or, I mean, but even just irreparable injuries, if you're trying to figure out what's sort of the easiest way out, and I'm just assuming, I'm just thinking this through. Right. It just seems you have this very, very high showing of injury that's required here. You have to have an exceptional, I think that's why we even do the substantial likelihood language, but it's a substantial, you have to have irreparable injury. Right, right. A preliminary injunction is an extraordinary remedy never awarded of right, so EPIC is wrong on the merits, but you're absolutely right that they have to show a really strong, special injury to qualify for a PI. Do you have any information about the timeframe for the privacy assessments that are still outstanding? So the Census Bureau is in the process of reviewing those and figuring out whether updates are needed. I expect that they will be completed by January 2020. I don't have any reason to doubt that. Well, you don't have any sense of whether they'd be sooner than that? I don't know for sure, and I, you know, the Census Bureau, of course, is extraordinarily busy right now, and I don't want to commit to any timelines faster than that, but the Bureau certainly is actively working on these things. When do they actually begin the collection of data? My understanding is that a few first census forms may be sent out in January 2020. Most of it is after that, but January 2020 I understand to be the beginning date. Yes. I didn't recall them having been that early. Right, I think, so Census Day is in April, but my understanding is that there are a few forms that, for sort of special circumstances, that go out earlier than that. I do want to be sure to touch on standing because we do think it's an important issue. You know, the district court that oversaw a trial in the merits census litigation found that plaintiffs there lacked standing to challenge the citizenship question on privacy grounds, and the plaintiffs there, again, as Your Honor alluded to, plaintiff organizations submitted affidavits saying that they had members who were individuals who were either undocumented or had family members who were undocumented, but the district court nonetheless said in light of the, you know, extraordinary restrictions on disclosure that the Census Act imposes as well as the criminal penalties that that act imposes, it would be pure speculation to suggest that those people would be injured. And EPIC, you know, comes in with affidavits that are quite cursory. Yours is different, though, if they're focused on informational injury, and that you have a right, like a hippotype right. You know, I have this private information, and I have a right under this statute to know how it's being handled. Now, there can be statutory debates, as there certainly have been, about timing, when you're in what time frame are you entitled to get this information. But I assume you don't dispute, I mean, you don't dispute that the assessments need to be done before the questionnaires go out in the mail, correct? We haven't disputed that. You don't dispute that. And you don't dispute that once you've done those privacy assessments, you need to publish them, and they have a right to see them consistent with whatever limitations on sensitive information. Right, the statute says if practicable, they should be published. I don't expect that it will be impractical. And you've already done the Senate White One, and you've done tons of these privacy assessments all over the place, including for the citizenship question. So it seems to me that there's no dispute that they have a right to see this information, and to have this information is just a question of timing for injury purposes. Right, a couple of responses to that. First of all, I want to be very clear that if the court thought they had informational standing, of course, the only remedy that they would have standing to seek is, as you say, disclosure of information, not to try to halt the citizenship question or anything like that. So you'd have to have a minimum of reparable injury to do that. Yes, absolutely right. And second, we read this court's prior Section 208 decision in Epic's case from about a year and a half ago as saying that the statute, that Section 208 does not create a broad public informational right like FOIA or FACA does. We read the court's decision to hold that a person, Congress created a concrete right to information in people whose privacy is actually threatened, where privacy is at stake in a meaningful way. And here, there's no reason to think that Epic's advisory board will have a privacy injury of any kind. So we actually don't think that the injury that Epic is claiming on behalf of its advisory board is the type that Congress intended to. I mean, the statute is not written at all narrowly. It's that people, it's like, look, technology's happening, right? And the government's going to have to get on board with this. And it's going to lead to a proliferation of both information collected and processed and moved through the government. And as I read the government act, it said folks have, what folks have a right to do, what you as a government have to do is be cognizant of these privacy issues, do this assessment, and they have a right to know that the government's thought about what it's doing privacy-wise, and here's what it's doing to protect that information. It's not just people who have what we would call very sensitive private information, right? It's handling of personal information. So we have read the decision differently. I'm just talking about the statute. I thought you were talking, I'm just talking about what the statute says. Right. Okay. The statute, I mean, the statute sets out purposes about. Otherwise you wouldn't be doing all these privacy assessments. Right, right. Yes, that's right. But this court interpreted the statute in this case from a year and a half ago, and we had read the court's decision to suggest that, you know, the court held very clearly that Epic as an organization did not have informational standing to compel these. That dealt in part, at least, with the nature of the organizational structure of Epic. That has been changed since then. As far as their basic eligibility to be an organization for purposes of associational standing, can you really rely on that prior decision? They have now changed to that they have members. We said before you don't have members, you can't have associational standing. Now they have members. Right. Are they at least entitled to assert associational standing? So, to be clear, I was not referring to the decision to say that Epic lacks organizational standing as an organization. I was drawing more on what I understood to be the court's interpretation of the statute more broadly. But we do think that this, you know ---- You seemed in your brief to rely in the resistance to associational standing of the prior decision where we said they couldn't have it if they didn't have members, so they couldn't ask for their members. Now they have now changed their ---- And I use organizational in a delayed sense, not in the technical sense, before and after the term of art. But they have now changed their organizational structure, again, using organization in a delayed sense, not in the term of art. But they have now changed it in such a fashion that they do have membership. So isn't that prior decision conscious of inefficio as far as that first question is concerned? So we do not think that they have changed their organizational structure in a way that makes them a genuine membership organization. You know, the purpose of associational standing ---- I'm not sure I see why not. I was a little surprised, but you were taking that tack in the brief. I don't see why they didn't do exactly what they needed to do to become a membership association for purposes of establishing that sort of standing. A membership association represents a constituency of people out in the world who share some distinct interests. Are you saying their members are not people or they're not out in the world? We're saying that the people they have now labeled members are their advisory board. They are not a constituency. So what? Why can't the advisory board be composed of constituents? You know, I don't ---- if the court disagrees with us on this, there are, of course, many other grounds on which we think ---- Well, you made the argument. I'm just trying to understand your argument. Yeah. Okay. So ---- Why can't the board of advisors and membership be coterminous? Because a membership association is supposed to represent people out in the world, members of the public who band together to ---- Are you saying their members of the board are not people or they're not out in the world or they're not part of the public? I'm saying that the relationship to the organization is not the relationship that members have to an organization. They are an advisory board. I don't see why an advisory board and membership can't be coterminous. I didn't find any brief explanation to that. I'm not hearing you explain that. I think that ---- If they had a six-member board of advisors, you might have an argument. Did you look at the list of their board of advisors? It's fairly long, but these are advisory board members. These are not members. And if you look at the ---- Who do you think they picked to be on their advisory board? Yeah. Have you ever seen an advisory board that wasn't composed of members? Well, look, boards have members in one sense, but those are not members in the sense that a membership organization ---- Are you saying they have to have an advisory board plus one non-advisory board member to be an association? We think that they would have to have a constituency of members of the public who join and ---- Why can't you have them where two or three are gathered in the name, right? Why isn't that enough? It could be a really small association, but that's everybody in the country who cares about something. They've gathered together, and because it's small, you know, if you're a member, you also have to do some work. I don't dispute that the membership of a membership organization could be small, but here EPIC's advisory board doesn't have any of the practical indicia of ---- What representation does it not have? They pay dues. They call themselves members. They pay dues that they have never quantified. They might be a dollar a year. They don't elect the organization's leadership. If you look at even the amended bylaws, this is JA 229 and 231, it's not the advisory board that elects the board of directors and the officers. It's the board of directors that does this. Again, you know ---- Is there any case that says that it's necessary for the total membership to be involved in the particular election of the board of directors in order to be an association? The Supreme Court decision in Hunt says that that's one of the signs that something is ---- It's an indicator. It's a sign, but it may be sufficient but not necessary. I don't know of anything in Hunt that says that they have to be involved in the election of the board of directors in order to be an association. I also don't know of a case that says that is an absolutely necessary condition, but we think it's a bit odd that a month after this court's prior decision, EPIC amended its bylaws in what we view as a pretty superficial way. So you think it's all a ruse? It seems ---- Bad faith. You're trying to fraud on the court? No, I'm not accusing them of bad faith or fraud. Are we allowed to reorganize? Congress can reorganize all the time. Groups can reorganize. Okay. Again, this is not necessarily a hill on which I wish to die on. It just struck us as peculiar, and it was something that we wanted to raise with the court. I'm happy to answer any other questions the court may have. Does Mr. Davison have any time? All right. We should take two minutes. Thank you, Your Honor. I just want to hit a few quick points. Tad, a couple pieces of information. Have you looked at the privacy assessment that was done for the citizenship question on the American Community Surveys? I think I have read them at some point, but it's been a little while, Your Honor. But this is a different collection. There are privacy assessments out there by the Census Bureau covering the citizenship question. But it's just going to 3 or 4 million people instead of the entire country. We have not looked at that assessment closely to analyze for adequacy, but it concerns a different collection of information. Have your members who want this information looked at that and said, I still have some sort of quantum gap in information that I'm lacking without how the government is going to handle my citizenship information that is substantial enough to get me a PI? Your Honor, it is a different collection of information. It may be similar in nature. It's collecting the exact same piece of information we're talking about here. For a different purpose. The agency has claimed that the purpose of this is to develop block-level citizenship. Yeah, the Census stuff is maybe even more protective because they're using the American Community Survey for more analytical reasons, right? Do you dispute that the Census Bureau information would be – do you have any plausible good-faith basis for believing that the census collection of that same piece of information by the same entity for broader disclosure as part of the general census would be in any way less protected? Your Honor, the burden rests on the agency. Do you have any plausible basis for thinking – this is an informational case. That's correct, Your Honor. You have a lot of information. There's a lot of information out there, and they've done a lot of privacy assessments, both for the census and for the ACS. I guess I'm wondering what quantum of information it is that they think is missing. There is specific – You have to show irreparable injury. That's correct, Your Honor. So the specific information that is missing from all the documentation that's been published to date does not explain how – does not explain what other methods of obtaining – You didn't challenge the ACS privacy assessment. Because this is a different collection of information. We're concerned with the collection of information. It is nationwide. It affects every member of EPIC. It affects every person who resides in the United States. So it simply is a different collection. I just wanted to add two quick pieces of information concerning associational standing. The first is that EPIC's dues are $100 a year, and the second is that we're not arguing – excuse me – that this court has held, rather, that 208 is designed to protect individuals. And it does that by assuring that they will have access to information prior to the initiation or collection of information by an agency. And it assures them that their privacy is being protected, that their personal data will be in good hands when it is collected, if at all, by an agency. Do you mind – would either one of you, I guess maybe the government, be able to send in a letter telling us how many people have gotten the ACS surveys that include the – or even if it was long-form, since the e-Government Act was passed, how many have gotten the citizenship question? Do you mind, sir? If there are no further questions. Thank you.
judges: Henderson, Millett, Sentelle